PATTERSON, Respondent, vs. EDGERTON SAND & GRAVEL
COMPANY and others, Appellants.

*January 11—February 15, 1938.*

12

For the appellants there was a brief by *Sanborn, Blake & Aberg* of Madison, and *Nolan, Dougherty, Grubb & Ryan* of Janesville, and oral argument by *Ernest H. Pett* of Madison and *George B. Blake.*

*Frank R. Bentley* and *Edward L. Kelley,* both of Madison, for the respondent.

FRITZ, J.  The judgment under review is for the recovery of damages by the plaintiff, Earl Patterson, for personal injuries which he sustained upon being struck by an automo-

bile truck operated by the defendant, Harry Wescott, as an employee of the Edgerton Sand & Gravel Company. The plaintiff was injured while working in a private gravel pit where he and others were employed on a WPA project under John Finley as foreman. Finley had directed the plaintiff and William Ames, a fellow employee, to remove large, heavy, frozen lumps of ground lying adjacent to the wheel track of a temporary roadway extending about forty feet from a movable power shovel to a hopper and gravel crusher. The shovel was used to excavate gravel and load it on a truck which, when it was loaded, would be backed up the temporary roadway by Wescott to the hopper. As the place of excavation changed, the shovel had to be moved about every second day, and it was therefore necessary to move the roadway also about the width of the wheel tracks, and to level the surface for that purpose. When Finley directed the plaintiff to do that work, the truck was standing with a load on the roadway, and immediately to the rear and right of its rear right wheels there were lumps of ground which the plaintiff and Ames were to remove. The plaintiff first walked to a tool shed to get a crowbar, and then returned and started to pry loose a lump with the use of the crowbar at the rear right corner of the truck. In doing that he had to bend down with his back toward the truck and with his foot about eighteen inches from the rear wheel. While he was in that position, the truck backed onto him and crushed his leg.

The jury found that the plaintiff's injury was caused by negligence on the part of Wescott in failing to sound his horn or give some other signal of his intention to back the truck, and in failing to keep a proper lookout; and also on the part of the plaintiff in not keeping a proper lookout for his own safety, and in being where he was when the truck struck him; and that eighty-five per cent of the total causal

negligence was attributable to Wescott, and fifteen per cent to the plaintiff.

On this appeal the defendants contend that the court erred in submitting any questions to the jury as to negligence on the part of Wescott, and in not directing a verdict in favor of him and his codefendants on the grounds that the accident happened on private premises in a part of the pit where men were not working; that Wescott had no reason to suspect that someone would step in behind the truck; and that it was Finley's duty to keep a lookout for Wescott and he had the right to rely thereon. In support of those grounds there was testimony to the effect, if believed by the jury, that Finley was the watchman to keep the roadway clear; that before Wescott backed up he stood with Finley to the rear and left of the truck to see if the roadway was clear in back of it; that after observing that nobody was there, and the roadway was clear, Wescott boarded the truck, the motor of which was running, and then stepped on the accelerator and started to back, while looking out of the side of the cab, over his left shoulder, to see if anyone was to the rear, and if the roadway was clear; that he saw only Finley, who was off to the side and had ordered him to back, and did not give any order not to back; that between the time that Wescott backed up and the time that he stood in back of the truck, before entering the cab, could not have been over five or six seconds; and that after the truck was backing up he heard someone holler.

On the other hand, there was evidence which fairly admitted of considering the following facts established: Finley, after directing the plaintiff and Ames to remove and level the lumps of ground, walked to the rear of the truck to see that no one was hit by the shovel. Nobody was there then excepting Finley and Wescott, so the latter entered the cab of the truck. Finley walked four or five paces to a knoll

in order to see and count trucks, which he heard coming down a public highway to get gravel. When he had counted seven to eight trucks, he heard Wescott's truck start, and, as he was about to turn around to look out that he would not be struck, he saw that Wescott was backing up, and that the plaintiff was working with the crowbar under a lump and had his foot about eighteen inches back of the rear wheel of the truck. Finley hollered but before Wescott stopped, the truck backed about two and one-half feet and crushed the plaintiff's leg nearly to the knee. After the plaintiff had been directed to remove the lumps, and while Finley and Wescott stood near the truck, the plaintiff had walked sixty to seventy-five feet to the tool shed for the crowbar, and then, while Finley and Wescott turned and walked away with their backs toward the direction from which the plaintiff was coming with the crowbar, he walked to the rear of the truck,—the body of which was about as high as a man's head,—and worked there without being seen by Wescott or Finley between the time that the latter turned and walked to the knoll and counted the seven to eight trucks, and then looked around toward Wescott's truck upon hearing it back. During that interval the plaintiff, in addition to getting the crowbar, was engaged in trying to break up and remove a lump which was one and one-half to two feet from the outer edge of the roadway and immediately to the rear of the right rear wheel of the truck. To get sufficient purchase on the lump he had to stand directly in back of that wheel, and when struck he was trying to raise the lump with the crow-bar, while bending down with his left hand closer to the lump than his right, which placed him with his back toward, and his foot within eighteen inches of that wheel. He was not given any warning of the intention to back the truck, and did not think it would back without warning. He did not notice or hear whether any exhaust came from the pipe, and

was first conscious of the truck's backing when it struck his back and knocked him down. A few other employees, working at distances of twenty to one hundred feet away, testified that they saw the plaintiff working at the rear and side of the truck for periods varying from a few seconds to a minute or so before the accident; and Ames, who was working with the plaintiff, testified that it was five to ten minutes from the time the plaintiff came back with the bar until the accident; and that when Ames went to work near the hopper, he saw Wescott standing on the left side of the truck, near the front door, but did not see him after Ames started to work.

In view of those facts, it was within the province of the jury to conclude that Wescott, as well as Finley, had left the rear of the truck before the plaintiff or Ames reached the place where they had to work in leveling off the ground for a new roadway; that, although Wescott ought to have known that Finley had walked away and did not continue to keep a lookout to protect men working at the rear of the truck, he did not look again in that direction during the entire period which elapsed while the plaintiff walked to and back from the tool shed, and then worked near the right rear wheel in his efforts to remove the lump; and that the length of that period was such that Wescott ought, in the exercise of ordinary care, to have taken another effective observation in that direction, and sounded his horn or otherwise given an effective warning signal of his intention to back up. Consequently, the evidence admitted of the jury's findings that the plaintiff's injury was caused in part by the negligence of Wescott in failing to give such a signal, and to keep a proper lookout; and therefore it was not error to deny the defendants' motion for a directed verdict and to submit those issues to the jury.

Even though the premises were private property, the jury could believe under the evidence that Wescott ought to have

known that men were employed there; and that he ought to have observed or anticipated that some of them might be at work close to the truck. In that respect the conditions at the pit,—even though it was private property,—differed materially from the conditions on the private farm upon which the accident happened that was involved in *Heikkila v. Standard Oil Co.* 193 Wis. 69, 213 N. W. 652. But furthermore, in so far as the private character of the premises was involved herein, the jury was rightly and sufficiently instructed that "the questions of negligence as applied to Wescott, the driver, are not covered by the law of the road or the rules applying to a public highway; but his actions are to be tested according to the ordinary standards of prudence and care which persons ordinarily exercise when driving a truck or anything of the kind upon private grounds." That instruction was applicable and ample in respect to the questions submitted to the jury as to negligence on the part of Wescott in failing to keep a proper lookout, and in failing to give a proper signal of his intention to back the truck.

Likewise, in so far as it could have been found under the conflicting evidence in that respect that there was any duty on the part of Finley to watch to avoid injury to men working about the truck, the jury was rightly and sufficiently instructed that,—

"If Wescott knew or had good reason to believe that someone might get back of that truck after he took his last observation and before starting up, or if under all the circumstances he should have known or did know that someone might get back there then it was his duty to keep a close lookout, even to the point of its being necessary for him to get out of his truck, walk to the rear and find out. If, on the other hand, the foreman, Finley, assumed the responsibility of that lookout and Wescott had the right to believe that the foreman, Finley, would look out and warn him if anybody got in the track why then the lookout on his part would be unnecessary."

But the defendants contend that, in connection with that instruction, the court should also have charged the jury that, in the absence of the circumstances stated therein or under certain other states of facts, there was no duty on the part of Wescott to make any further observation. In respect to that contention it suffices to note that there was no reversible error for the reason that the instruction was in accordance with a request by the defendants; that there was no sufficient request to instruct as to when or under what other facts or circumstances there was no such duty on Wescott's part; and that it was not necessary as a matter of law to instruct expressly as to when or under what other facts or circumstances no such duty existed.

Defendants further contend that the question as to whether Wescott was negligent "in failing to keep a proper lookout" was not in proper form. They argue that in lieu thereof requested questions should have been submitted as to whether Wescott, immediately before starting the truck, failed to look to the rear of his truck to ascertain that there was no one on the traveled portion of the roadway behind him; whether he failed promptly to proceed to the cab and start the truck; and whether, as he started the truck, he failed to maintain a lookout from the left side of the cab as he proceeded. That contention cannot be sustained. As the ultimate fact to be determined by the jury in that respect was whether Wescott was negligent in failing to keep a proper lookout, there was no occasion, and it would have been bad practice, to submit the questions requested, which related to but mere evidentiary details that were involved in the ultimate fact to be determined by the jury under the question submitted by the court, and upon which the plaintiff's right to recover depended.

Likewise, there was no error in the submittal to the jury of the question as to whether Wescott was negligent in

"failing to sound his horn or give other signal of his intention to back the truck." That question is not confined to a warning by blowing the horn. It includes also "other signal of his intention to back." The fact that there was no evidence that there had been any order or custom which required the blowing of a horn or the giving of a signal did not preclude finding that, under all the facts and circumstances disclosed by the evidence, the failure in those respects constituted negligence. In other words, the existence of negligence in those respects was not dependent, necessarily, upon any prior order or custom expressly requiring some such signal. Moreover, if there was no opportunity, as defendants claim, for an effective and timely lookout, then the mere fact that there were noises which might have rendered the sound of a horn insufficient as a signal, would not necessarily preclude finding that Wescott was negligent in not giving some other effective and timely signal of his intention to back the truck. Neither does it follow, as a matter of law, that the absence of such signal cannot be considered a cause of plaintiff's injury because,—as defendants claim,—the starting up of the truck motor and the blast of exhaust gas, which must have occurred immediately behind it, would be an equal or more effective warning to a person in the plaintiff's position than the sound of a horn pointed in the other direction on the front of the truck. It was within the jury's province to consider that claim unsound because, as the motor was running all the time and the truck backed up on Wescott's stepping on the accelerator, there was not necessarily any such noise by reason of the starting of the motor truck or a blast of exhaust as to constitute a sufficient warning, or such an interval between the blast and the truck's starting and backing up and injuring the plaintiff as to constitute such blast and starting a timely and sufficient warning to enable him, in the exercise of ordinary care, to escape and avoid injury.

Defendants further contend that, by putting himself in a place of imminent danger, the plaintiff was at least as negligent as Wescott. On that subject, the jury found that there was contributory negligence on plaintiff's part in being where he was when the truck struck him, and in not keeping a proper lookout for his own safety; but that his negligence was but fifteen per cent of the total negligence attributable to him and Wescott. Those findings were warranted by evidence which admitted of finding that in order to remove the heavy lumps that were immediately to the side and rear of the wheel of the truck, the plaintiff was obliged to work close to, and with his back toward the wheel; and that while at work there he was absorbed in the performance thereof, and could assume that Wescott would keep a proper lookout and give him timely and sufficient warning of the intention to back the truck. Under the circumstances, there was applicable the rule that "such diversion or preoccupation so far excuses the exercise of that degree of care ordinarily required as to make it a jury question whether the plaintiff's conduct under the actual circumstances constitutes ordinary care." *Hodgson v. Wisconsin Gas & E. Co.* 188 Wis. 341, 344, 206 N. W. 191; *Turtenwald v. Wisconsin Lakes I. & C. Co.* 121 Wis. 65, 70, 98 N. W. 948.

Defendants also contend that the issue as to comparative negligence was not properly submitted because the jury was not directed by either the form of the questions or the court's instructions to include negligence on the part of Finley with that of Wescott and the plaintiff in finding the proportion of the total causal negligence attributable to each of them, as is required under *Walker v. Kroger Grocery & Baking Co.* 214 Wis. 519, 252 N. W. 721. However, the record herein discloses that the defendants are not entitled to a reversal on that ground for the following reasons: They did not request the submittal of any question to the jury, or the giving of any instruction in respect to the inclusion of negligence

on Finley's part in the total negligence which the jury was to take into consideration in finding the proportions of causal negligence attributable to Wescott and to the plaintiff, respectively. In the absence of any such request and any finding by the jury on that subject, there is applicable the rule that,—

"When some controverted matter of fact not brought to the attention of the trial court but essential to sustain the judgment is omitted from the verdict, such matter of fact shall be deemed determined by the court in conformity with its judgment and the failure to request a finding by the jury on such matter shall be deemed a waiver of jury trial *pro tanto.*" Sec. 270.28, Stats.; *Lefebvre v. Autoist Mut. Ins. Co.* 205 Wis. 115, 236 N. W. 684; *Schumacher v. Carl G. Neumann D. & I. Co.* 206 Wis. 220, 239 N. W. 459.

Moreover, the defendants were not prejudiced by the omission to include negligence on the part of Finley in the total causal negligence which the jury was to take into consideration in finding the percentage thereof attributable to the plaintiff and Wescott, respectively. If the jury had found that a certain percentage of that total negligence was attributable to Finley, that would have left a balance of less than one hundred per cent attributable to Wescott and the plaintiff; and if the jury had apportioned that balance between the latter two in the same ratio in which it apportioned the one hundred per cent between them (as the jury presumably would have done), then,—even though the percentage attributable to each of them would have been less than eighty-five and fifteen per cent, respectively,—the percentage found attributable to the plaintiff would have continued to be less than the percentage attributable to Wescott. In that event, in computing the amount which the plaintiff would be entitled to recover under the verdict, the deduction from the jury assessment of damages would have to be a smaller percentage thereof than the fifteen per cent deduction made

under the verdict which was returned; and the defendants would have been liable to the plaintiff for the full amount of his consequently greater recovery. Therefore, the omission to have the jury include negligence on the part of Finley in finding what percentage of the total negligence was attributable to Wescott and the plaintiff, respectively, was not prejudicial to the defendants (*Ross v. Koberstein,* 220 Wis. 73, 264 N. W. 642), in so far as their liability to the plaintiff for the amount of his recovery herein is concerned. It follows that the judgment must be affirmed.

*By the Court.*—Judgment affirmed.