GUNNING, Respondent, vs. KING and another, Appellants.

*January 7, June 5—June 22, 1946.*

For the appellants there were briefs by *North, Bie, Duquaine, Welch & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge.*

For the respondent there was a brief by *Martin, Clifford, Dilweg & Warne* of Green Bay, and oral argument by *G. F. Clifford.*

ROSENBERRY, C. J. On December 22, 1941, the Bahr Construction Company was engaged in installing a cable beneath the pavement of Washington street near its intersection with Stuart street, in the city of Green Bay. The situation is best disclosed by reference to a map (Exhibit 1), a reduced copy of which is reproduced herewith.

The barricade was near the southwest corner of the intersection.

The only evidence in the case with respect to the happening of the accident is that given by the plaintiff Gunning and a statement made by Eugene King, the driver of the car, which was admitted upon stipulation of the parties. Gunning, a man sixty-one years of age, testified:

"I recall the accident on December 22, 1941. It was around 8 o'clock [p. m.]. The Bahr Construction Company was putting a cable down under the pavement for the telephone company and my duties were to light lanterns and red lights and keep them agoing and take care of them and pick any materials and tools and put them all in a pile. There was a hole there and there was a barricade of four horses placed around it, one across each end, about seven feet each way and three and one-half feet high. We had six or eight lights on there. Two on each end, hanging on those barricades. There

Exhibit 1

was a street light there, an arc light.  Just before the accident I went over to the side of the street and picked up two irons that were broke—legs broke of the barricade, and I wanted to take them on the other side of the street and put them in a

pile so they could have them the next morning. Somewhere south there of the intersection was where I was hit. I picked the irons up at the southwest corner and I walked east. I went about three feet past the center line where I was struck by this car. The car went about twenty feet after it hit me. I was three feet from the center of the highway when I was hit and about fifteen feet from the south curb of Stuart street. I was facing east at the time I was hit but he threw me about fifteen feet north. The left fender hit me. He stopped his car and got out and said he didn't see me. He took me to the hospital."

The plaintiff testified that just as he stepped off the curb on the west side of Washington street, he saw the King car stop at the arterial on Stuart street. The King car was traveling west and stopped on Stuart street at the arterial east of the east line of Washington street. Eugene King, the driver of the car, said:

"I stopped for the arterial and moved out. I was in low gear, going about ten miles an hour. I turned the corner, crossed the sidewalk and traveled about eight to ten yards south. I was on my own side of the road traveling on the west of the sidewalk of the highway. I saw nothing. It was clear but the road was wet. I heard a thump and I stopped and found a man on the pavement."

He took the plaintiff to a hospital.

It was conceded on the trial that the plaintiff sustained an injury at the time and place in question. The jury found that the driver, King, failed to keep a proper lookout, that he did not drive to the left (east) of the center line of Washington street; that his failure to keep a proper lookout was negligent and a cause of the plaintiff's injury; that the plaintiff failed to exercise ordinary care for his own safety, which failure was a cause of his injuries, and found that of the whole negligence 68⅓ per cent was due to the negligence of the driver, King, and 31⅔ per cent to the negligence of the plaintiff.

On this appeal the defendants contend that the court erred in instructing the jury with respect to the plaintiff's duties while crossing the street. Among other things, the court instructed the jury as follows:

"So, from all the evidence you must say whether or not Gunning failed to exercise ordinary care under the circumstances then and there existing. Gunning was a man engaged in work upon the highway. He had an equal right to the highway with other users of it, and a man so engaged upon a highway, cannot, if he performs his duty, spend a large part of his time in looking for approaching cars or other vehicles. In a busy street, he would accomplish little if he did so. Of course, he cannot let his thoughts to wool-gathering and expect all users of the highway to give place to him; he must exercise some care and vigilance; he must keep that lookout for vehicles and cars which an ordinarily careful man similarly engaged or situated would keep; such as a man who is. compelled to work in the street would keep while giving attention to his work. Such care manifestly is of a lesser degree than the care required of a person who is on the highway for the purpose of travel alone and may come or go at his will. So determine what plaintiff was doing; how busily he was engaged in his work; where he was walking; what attention, if any, he paid to approaching vehicles; what he did or failed to do, looking to his own safety and then determine whether he failed to use such care as the ordinary careful and prudent workman in the street generally or usually exercises under the same or similar circumstances."

The rule of law thus laid down by the court was apparently based upon the decision in *Isgro v. Plankinton Packing Co.* (1922) 176 Wis. 507, 186 N. W. 606; and *Walker v. Pomush* (1931), 206 Wis. 45, 238 N. W. 859. In the *Walker Case,* a streetcar conductor, while on the street, engaged in flagging his motorman in the usual manner at a railroad street crossing, after the passage of a railroad train, was held to have the right to assume that drivers of automobiles waiting at the crossing would observe a proper lookout and not wilfully or carelessly run him down while he was so engaged.

In the *Isgro Case, supra,* the plaintiff was engaged in pavement-construction work, and at the time he was struck was wheeling a heavy barrow of crushed stone in an attempt to clear a narrow passageway in time to avoid collision with the truck which struck him.

It is considered that the law of these cases is not applicable to the situation to which it was applied in this case. Here, the plaintiff was engaged in crossing the street. While crossing the street he had no duty to perform different from that which other pedestrians have to perform, that is, to exercise ordinary care for his own safety. What he was doing in no way diverted his attention from his surroundings. He was carrying two angle irons. The mere fact he was carrying two angle irons did not require him to give attention to the angle irons. The jury found that he was struck while he was to the west of the center of the street. Although the jury found him negligent, the court's instructions erroneously gave him the benefit of the protection afforded workmen on a street so engaged that their attention must be given to their work and not to their surroundings. The instruction given by the court must have affected the jury's determination as to the *quantum* of the plaintiff's negligence and therefore was prejudicial.

This case is nearly on all fours with *Hoelmer v. Sutton* (1940), 207 Minn. 140, 143, 290 N. W. 225. In that case the plaintiff was engaged in setting out flares to warn traffic of certain mounds on the highway. After dark he set one out on a heap of dirt near the north side of the highway and then started to cross the highway to set a flare on a mound of dirt on the south shoulder. While crossing the street he was struck by defendant's car and received injuries from which he died. The court said:

"However, this is not the ordinary case of a workman preoccupied with work in the lane of traffic. Here the decedent had nothing to do on the pavement itself except to walk across it when going from one shoulder to another. . . . It was

after normal working hours for other members of the crew. There was no one to warn him, nor was there anyone stationed there to control the traffic. He had to rely on his own vigilance for protection against the known danger of approaching cars."

In that case the court adjudged the plaintiff guilty of negligence as a matter of law. See also *Bubb v. Milwaukee E. R. & L. Co.* (1917) 165 Wis. 338, 162 N. W. 180; *Reid v. Owens* (1939), 98 Utah, 50, 93 Pac. (2d) 680; *Greenberg v. McCusker* (1943), 154 Pa. Super. 36, 35 Atl. (2d) 81.

The accident happened on the 22d day of December. The plaintiff saw the automobile stop for the arterial and, upon the facts found by the jury, he must have walked in front of the approaching automobile, which apparently was lighted, without giving himself any concern for his own safety. It is considered that it is a question for the jury to say whether his negligence, under all of the circumstances, was as great as or greater than that of the defendant driver.

Inasmuch as there must be a new trial, we pass the contention of the defendant that the damages as found by the jury are excessive.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

Fritz and Barlow, JJ., dissent.