KNUTTER and wife, Appellants, v. BAKALARSKI and another, Respondents.

*No. 179. Argued September 8, 1971.—Decided November 5, 1971.*
(Also reported in 191 N. W. 2d 235.)

For the appellants there was a brief by *Foley, Capwell, Foley & Seehawer* of Racine, and oral argument by *Rex Capwell*.

For the respondents there was a brief by *Helm, Myers, Gillette & Christensen* of Racine, and oral argument by *Einer Christensen*.

HALLOWS, C. J.   Both parties agree the issue is whether a volunteer fireman crossing a highway on foot while in the course of acting as a fireman engaged in a search for a reported fire is to be held to a lesser standard of care for his own safety than that which is imposed upon an ordinary highway pedestrian.  A request for an instruction to the jury to that effect was made and refused by the trial court as being inapplicable on the facts. Although the finding by the trial court of negligence on the part of Alfred H. Knutter as a matter of law is not assigned as an error, the question of the standard of care is properly raised because of the effect such instruction would have on the comparison of negligence by the jury. *See Lovesee v. Allied Development Corp.* (1970), 45 Wis. 2d 340, 173 N. W. 2d 196.

Mr. Knutter was a volunteer fireman and the chief of the fire department of Pleasant Prairie in Kenosha county.  On October 6, 1969, between 1:30 and 2 o'clock in the afternoon a call came to the fire department reporting a grass fire in the vicinity of Rabs Motel, south of Kenosha on State Highway 32.  The call was transferred to the volunteer firemen who proceeded to the area.  Chief Knutter was picked up by John Koker, a volunteer fireman, and taken to the Rabs Motel.  Koker parked the car facing south on the west side of State Highway 32 across from the Rabs Motel.  Shortly after Koker's arrival he

was joined by Kenneth Miller who parked his Volkswagen behind Koker's car.

Knutter left Koker's automobile and proceeded across State Highway 32 to the east to speak to a woman at the motel regarding the location of the fire. After a short conversation, Knutter started back across the highway. Koker called to Knutter and indicated a fire truck was approaching from the south. At approximately the same time the automobile driven by Bakalarski was approaching from the north. Bakalarski testified he first saw Knutter 200 to 300 feet away and at that time Knutter was going east. Bakalarski next saw Knutter when the left front of his automobile hit Knutter when Knutter was a few feet west of the center of the highway. Bakalarski saw the two automobiles parked on the west shoulder but apparently not their flashing red lights. He continued at a constant rate of speed of 40 to 45 miles an hour without the application of his brakes or giving a horn warning until he struck Knutter, seriously and permanently injuring him. At the time of the accident, Knutter was not dressed in a traditional fireman's outfit but wore coveralls, which he was wearing for his highway department job.

The trial court was of the opinion it should not give an instruction that Knutter's standard of care for his own safety was less than that of an ordinary highway pedestrian. The trial court thought there was no evidence which justified "any absent-mindedness with respect to the world about him," as there may be of a workman working on a highway. In language customarily used in reference to a workman, we take the court's language to mean "momentary diversion of attention, or preoccupation in the discharge of duties, minimizes the degree of care required in the absence of such diversion or preoccupation." *Hodgson v. Wisconsin Gas & Electric Co.* (1925), 188 Wis. 341, 206 N. W. 191.

The court reasoned the chief saw no fire, did not know where the fire was, knew it was only a grass fire of some sort, and had stopped to check with a woman who did not know where the fire was. Consequently, the court concluded there was not "any terrible immediate excitement of fighting a fire," and therefore Knutter was not in any different situation in crossing the street than is a lawyer thinking about his case. We disagree. A lawyer walking across the street has no responsibility to have his case on his mind. A fire chief going across the street in search of a fire should have the fire on his mind.

The request for an instruction of a standard of care less than that of an ordinary highway pedestrian was unfortunately phrased. The standard of care for a workman in a hazardous location is not related to the ordinarily prudent man or the great mass of mankind as defined in instruction Wis J I—Civil 1005. It is a lesser duty than a nonworkman under the same hazards. The workman's duty of care is usually stated as the care of an "ordinarily intelligent and prudent workman to carry on his work so as to guard against injury to himself." This is the language found in the Wisconsin cases for over forty-five years and includes the doctrine that momentary diversion of attention or preoccupation of a workman in the discharge of his duties minimizes the degree of care required of him in the absence of such diversion or preoccupation. This language is used in Wis J I—Civil 1051 [1] and is based upon such cases as

---

[1] "1051 **Duty of workman: preoccupation in work minimizes duty**

"Question .... inquires whether the plaintiff, ............, was negligent as to ............

"You are instructed that the plaintiff owed a duty to use ordinary care for his own safety, and, to that end, to observe the conditions surrounding him while at work upon the premises in question and the dangers which were open and obvious to him if he were using reasonable care and caution for his own safety, and,

*Criswell v. Seaman Body Corp.* (1940), 233 Wis. 606, 620, 290 N. W. 177, 183; *Patterson v. Edgerton Sand & Gravel Co.* (1938), 227 Wis. 11, 277 N. W. 636; *Neitzke v. Kraft-Phenix Dairies, Inc.* (1934), 214 Wis. 441, 253 N. W. 579; *Sandeen v. Willow River Power Co.* (1934), 214 Wis. 166, 252 N. W. 706; *Hodgson v. Wisconsin Gas & Electric Co., supra.*

In this case the instruction Wis J I—Civil 1051 was used as a basis for framing the requested instruction. Unmodified, it hardly fits this case but it might be applicable to accidents arising at the location of a fire. While it may be true the doctrine is referred to as a lesser degree of care for workmen under certain circumstances than for an ordinarily prudent man, that is of no significance. The reasoning supporting the rule applicable to workmen is grounded on public policy and recognizes that because a workman who is necessarily in the location of hazard, and necessarily must be absorbed in his work if it is to be efficiently performed has only a limited

thereupon, to use the care of an ordinarily intelligent and prudent workman to carry on his work so as to guard against injury to himself, so far as by reasonable care he could protect himself.

"The fact that a workman having knowledge of the existence of a danger continues to perform his work does not, of itself alone, make him lacking in ordinary care for his own safety. He fails to use such care only when, with full knowledge of the existing danger and with the free choice of acting either so as to avoid that danger or so as to expose himself to it, he deliberately or carelessly acts in the latter manner.

"You are further instructed that momentary diversion of attention or preoccupation of a workman in the discharge of his duties minimizes the degree of care required of him in the absence of such diversion or preoccupation.

"You will carefully consider all the credible evidence and the reasonable inferences from the evidence bearing on this inquiry and make such answer as you feel should be made, to the end that it may be determined by you whether the plaintiff, . . . . . . . . . . , was or was not negligent in the respect inquired about."

ability to watch out for the hazards, and a momentary preoccupation is not negligence if ordinarily prudent workmen under such conditions would have acted similarly. This concept has for years been stated in terms of lesser degree of care in relation to a workman and sometimes in relation to an ordinarily prudent man.

Thus in *Turtenwald v. Wisconsin Lakes Ice & Cartage Co.* (1904), 121 Wis. 65, 98 N. W. 948, it was held a street cleaner absorbed in his duties does not have the same duty of care for his own safety as an ordinarily prudent traveler. In *Dinan v. Chicago & M. E. Ry. Co.* (1916), 164 Wis. 295, 159 N. W. 944, a steamroller driver working on a streetcar right-of-way was not required to keep the same lookout as an ordinarily prudent traveler. In *Hodgson v. Wisconsin Gas & Electric Co., supra,* a lineman who inadvertently touched a live wire was not held negligent as a matter of law as he was required to work in a place of danger. In *Sandeen v. Willow River Power Co., supra,* the operators of a derrick which hit wires were not held negligent as a matter of law because they were preoccupied with their task. *See also: Patterson v. Edgerton Sand & Gravel Co., supra; Criswell v. Seaman Body Corp., supra; Knowles v. Stargel* (1952), 261 Wis. 106, 52 N. W. 2d 387; Campbell, *Recent Developments of the Law of Negligence in Wisconsin,* 1955 Wis. L. Rev. 5; Annot. (1949), *Liability for injury by vehicle to construction or maintenance worker in street or highway,* 5 A. L. R. 2d 757, 784.

In the instant case, Knutter was fire chief with a responsibility to get to the fire promptly and get there first so he could direct the efforts of his men. A fire is a public emergency. A fireman should not work on the assumption a grass fire is unimportant or the alarm may be false. Knutter was entitled to have uppermost and predominantly in his mind the fact he was attempting to locate a fire and prevent destruction. In such a frame of

mind, he cannot and should not be compared with the average pedestrian crossing a street but with an ordinarily prudent fireman under similar conditions. The momentary diversion of attention or preoccupation of a fireman ought not to depend upon the seriousness of the fire or the fire's location.

Knutter's situation is not analogous to *Gunning v. King* (1946), 249 Wis. 176, 23 N. W. 2d 602, where a watchman was struck by a car while carrying barricades across the street. The court correctly said the mere fact he was carrying two angle irons did not require him to give attention to the angle irons and distract him in his lookout. Here, Knutter, as fire chief, was pursuing his job which required him to have his attention concentrated on finding the fire while crossing the street. Such duty is the same whether he is a paid or a volunteer fireman, whether he is full time or part time and he need not be in a state of excitement or agitation or be in the immediate presence of the fire in order to be found mentally preoccupied with his official duties. We do not hold a fireman can violate the speed limit or any law in the performance of his duties. The issue here is a momentary diversion of attention while performing his duty. If he can qualify as operating an emergency vehicle, he is entitled to the rights of an emergency vehicle but no more. The fact that Knutter was not dressed as a fireman and the flashing red lights on the cars were not standard lights and could not be seen from the rear are matters which go to the negligence of Bakalarski and his contribution to the accident, not to the contributory negligence of Knutter.

One may wonder why it is necessary to have a special instruction in terms of an ordinarily prudent workman rather than explain under the general negligence instruction that an ordinarily prudent man under similar circumstances means a workman. It has generally been

considered the standard instruction for negligence of an ordinarily prudent man under similar circumstances does not mean that an ordinarily prudent man is a fireman. While it is possible to use the general instruction with an added instruction that an ordinarily prudent man does mean a workman as one of similar circumstances, understanding and clarity for the jury is best obtained by giving the specialized instruction in terms of an ordinarily prudent workman and not confuse the jury with a non-existent ordinarily prudent man converted into a workman by indirection.

We think the trial court committed reversible error in not giving an instruction based upon the doctrine of care applicable to an ordinarily prudent workman under the circumstances because of his claimed preoccupation with his duty as fire chief. Since no complaint is made as to the amount of damages found by the jury, a new trial need not be had on that issue.

*By the Court.*—Judgment reversed and a new trial granted limited to the issues of negligence, causation, and apportionment.

ROBERT W. HANSEN, J. (*concurring*). "Rich man, poor man, beggar man, thief. Doctor, lawyer, fireman chief." So, or nearly so, rope-skipping youngsters once were wont to chant. What if the seven mentioned in the rhyme set out to walk across a public highway? What degree of care must each or all exercise in taking the walk or crossing the road? The general rule, as the trial court here instructed the jury, is that "ordinary care" is required, meaning ". . . that degree of care which the great mass of mankind, or the ordinarily prudent man, exercises under like or similar circumstances." [1]

---

[1] As stated in Wisconsin Jury Instructions, Civil 1001.

OK as to six, but not as to the seventh, the three justices who would reverse for error appear to agree. For, as to the fire chief, they conclude the standard of care on his part in crossing the highway is to be somewhat less the variance required because of his preoccupation with his duty as fire chief. There is to be no similar lowering of the standard for the lawyer because he ". . . has no responsibility to have his case on his mind." "What then about the doctor?" ask the three justices who would affirm, and, "What about a plainclothes policeman or a husband or father taking his wife or child to a hospital?" The look down the road is appropriate, because, while we deal here only with a volunteer fire chief responding to a false alarm as to a grass fire, it seems clear that the creation of varying standards of due care for particular professions or occupations will not end with the recognition of the special circumstance of a firefighter responding to an alarm.

The three who would reverse for error elect to say, ". . . The standard of care for a workman in a hazardous location is not related to the ordinarily prudent man . . . It is a lesser duty than a nonworkman under the same hazards." They recognize but reject the alternative approach which is to ". . . explain under the general negligence instruction that an ordinarily prudent man under similar circumstances means a workman." The reason given for the rejection: "It has generally been considered the standard instruction for negligence of an ordinarily prudent man under similar circumstances does not mean that an ordinarily prudent man is a fireman." If not, why not? What else can "under like or similar circumstances" mean other than like or similar to the situation in which the plaintiff found himself: A fire chief, responding to an alarm, crossing a highway to ask those assembled where the fire was. Why he was there and what he was doing certainly are among the relevant

*circumstances* to which the general test applies. If the "ordinarily prudent man" test is "generally" not so understood, what is needed is a special instruction, or addition to the general instruction, that makes clear all *circumstances* come within the rule. Explaining the rule, not changing it, is all that is required.

The writer would hold all persons to a single standard as to what constitutes ordinary care: what an ordinarily prudent man would do *under like or similar circumstances*. The *circumstance* of a volunteer fire chief, not in uniform, responding to a false report of a grass fire is one of the *circumstances* for which the rule provides. When, as here, it is applied to a highway accident, the reference to *circumstances* goes beyond the physical factors, such as width of the highway, position of the cars or the locale of the accident. It includes the mission or work or special situation of the fire chief who brings this action for personal injury damages. The nature of his mission or function does not change the test, but mission and function are among the *circumstances* which the "ordinarily prudent man" would consider in the exercise of ordinary care.

We see the situation here presented as analogous to that involving persons who deal with instrumentalities that are known to be dangerous. It is clear enough that those who deal with high tension electricity must exercise great care because the risk is so great.[2] But more than semantics is involved in refusing to state that an electrician is held to a different standard of care than a plumber. The proportioning of care to danger does not require some occupation-dependent raising or lowering of the standard of care. It is only the *circumstances* that

---

[2] "Those who deal with instrumentalities that are known to be dangerous, such as high tension electricity, gas, explosives, or elevators, must exercise a great amount of care because the risk is great." Prosser, *Law of Torts* (4th ed. 1971), p. 180, sec. 34.

vary. The legal standard remains constant.[3] However, it is the particular *circumstances* present that determine what care a reasonably prudent person would exercise under all such circumstances.[4]

So the writer would find no error in the trial court refusing to instruct that there is a different and lower standard of due care for a volunteer fireman than for someone or everyone else.[5] However, applied to the facts and record in this case, the writer would find that Wisconsin Jury Instructions, Civil 1001, stating the "ordinarily prudent man" test[6] did not sufficiently inform the

[3] "Although the language used by the courts sometimes seems to indicate that a special standard is being applied, it would appear that none of these cases should logically call for any departure from the usual formula. What is required is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care." Prosser, *Law of Torts, Id.* at page 181.

[4] Similarly, in instructing on the standard of ordinary care required in an emergency, it is the presence of the emergency as a circumstance that is material in the application, not altering or abandoning the "ordinarily prudent man" test. *See:* 57 Am. Jur. 2d, *Negligence,* p. 439, sec. 91, stating: "The emergency rule is an application of the prudent man rule . . . . The emergency does not change the requirement of ordinary care, but the person confronted with the emergency is required to use only that degree of care which an ordinarily prudent person would exercise under the same or similar circumstances . . . ." Consistent with this approach, Wisconsin Jury Instructions, Civil 1051, dealing with ". . . preoccupation of a workman in the discharge of his duties. . . ." should be read to imply that a preoccupied workman need put forth only less effort to meet the ordinary standard under the circumstances.

[5] The rejected instructions read, in part: "You are further instructed that momentary diversion of attention or preoccupation of a *volunteer fireman* in the discharge of his duties minimizes the degree of care required of him in the absence of such diversion or preoccupation."

[6] " 'Negligence' means a failure to exercise ordinary care. 'Ordinary care' is that degree of care which the great mass of mankind, or the ordinarily prudent man, exercises under like or similar circumstances." Wisconsin Jury Instructions, Civil 1001.

jury that the "like or similar circumstances" to which the rule refers included not only the physical scene at the place of the accident but also the work and mission of the plaintiff. On the record here, the phrase "like or similar circumstances," left undefined, did not adequately inform the jury that what the plaintiff fire chief was engaged in doing at the time was among the *circumstances* they were to consider along with where he was walking when he was struck. While the instructions as requested were properly rejected, the instructions as given failed to make clear the totality of *circumstances* the jury was to include in applying the "ordinarily prudent man" test. So, in the interest of justice, the writer would reverse and order a new trial on the issues of negligence, causation and apportionment.

BEILFUSS, J. (*dissenting*). I do not disagree with the concept that a person whose work or activity requires or justifies "preoccupation" is entitled to the benefit of a rule requiring a lesser degree of care than is required by an ordinary prudent person. Nor do I think that a fireman, volunteer or otherwise, is not entitled to such a rule in most instances.

Whether a fireman or other individual is entitled to the rule of a lesser degree of care must be dependent upon the existent circumstance. Here I agree with the trial judge, who was in a much better position to appraise the circumstances than all or any of the members of this court, that there was not "any terrible immediate excitement of fighting a fire."

The plaintiff, Mr. Knutter, was responding to a fire call, a grass fire. When he arrived in the area where the fire was reported he saw no fire, did not know where the fire was, stopped and crossed a busy state highway to inquire of a woman where the fire was; she did not know, and he was crossing the highway again at a place where

pedestrians are required to yield the right-of-way and where any adequate lookout would have revealed the presence of the oncoming vehicle.

At the time he was struck he was not fighting a fire, he was not going to a fire, there is no evidence he was even looking for the fire at that instant,—he was only crossing the highway to go back to the car in which he had been riding. At the time he was struck there was not such a justifiable preoccupation as would entitle him to use a lesser degree of care for his own safety.

If the majority is correct, what rule applies to a plain-clothes police officer under similar circumstances, a doctor who is responding to an emergency call, a husband or father who is taking a sick wife or child to a hospital, or even a lawyer who is going to the courthouse to make his final argument to the jury in a capital case (at least his client would believe his lawyer's preoccupation would be justified) ?

It is my opinion that the trial court did not err in refusing to give a jury instruction on a lesser degree of care under the facts of this case. I would affirm.

I am authorized to state that Mr. Justice LEO B. HANLEY and Mr. Justice CONNOR T. HANSEN join in this dissent.