LAURIE LEWIS, as Adm'r of the Estate of Wilford Lewis, Deceased, Plaintiff-Appellant, v. THOMAS HAAVIG III, Defendant-Appellee.

Third District   No. 3—02—0250

Opinion filed March 28, 2003.

McDADE, P.J., dissenting.

Christopher W. Bohlen (argued), of Barman, Kramer & Bohlen, P.C., and J. Scott Swaim, of Swaim & Swaim, Ltd., both of Kankakee, for appellant.

James W. Fessler (argued) and Michael L. Resis, both of O'Hagan, Smith & Amundsen, of Chicago, for appellee.

JUSTICE SLATER delivered the opinion of the court:

The plaintiff, Laurie Lewis, as administrator of the estate of her deceased husband, Wilford Lewis, brought this wrongful death action against the defendant, Thomas Haavig III. The jury returned a verdict for the plaintiff in the sum of $1,192,753, which was reduced by 40% for the decedent's comparative negligence, resulting in a judgment of $715,651. The defendant filed a posttrial motion seeking a new trial, which the trial court granted. We granted plaintiff's petition for leave to appeal pursuant to Illinois Supreme Court Rule 306 (166 Ill. 2d R. 306). We reverse the trial court's order and reinstate the $715,651 judgment.

## I. FACTS

The record reflects that on November 20, 1997, at around 1 a.m., Sergeant Wilford Lewis, a Village of Bradley police officer, responded to a report of an automobile accident involving a single vehicle on Interstate 57 near exit 315. The Bradley police department became involved because the Illinois State Police were unavailable to respond at the time due to deployment in other areas.

Bourbonnais police officer Myron Devine arrived at the Interstate 57 scene first. A southbound van had crossed the median and the northbound lanes, finally coming to a stop on the exit ramp. Devine saw three injured men walking away from the van. Devine placed his vehicle near the off ramp at exit 315 and activated his emergency lights.

Shortly thereafter, Officers Lewis and Jensen arrived. They both

parked their squad cars immediately to the south of Devine's vehicle and activated their emergency lights. Several ambulances responded to the call as well.

Upon their arrival, Lewis and Jensen discovered that the occupants of the vehicle were confused and unable to respond to questioning. Lewis and Jensen searched the van and noticed an infant seat adjacent to an area where a window had been broken. Lewis and Jensen were concerned that a child who had occupied the infant seat may have been ejected from the van. After they backed their squad cars up to assure that the ambulances could approach the van, Lewis and Jensen started to retrace the path of the van along the northbound lanes of Interstate 57.

As Jensen exited his squad car, he saw a vehicle being driven by the defendant pass him traveling at about 80 miles per hour. Jensen saw the defendant's vehicle strike Sergeant Lewis from behind as Lewis was walking northbound in the passing lane. Lewis had been attempting to retrace the van's path in order to locate what he suspected was an ejected infant.

The defendant testified that on November 20, 1997, he was traveling from Champaign to the Chicago area after having attended a concert. He had been driving on Interstate 57 at 75 miles per hour during most of his trip from Champaign. He also traveled most of the distance in the left lane. The defendant said that as he approached the area of the emergency vehicles, he took his foot off the accelerator and slowed down. When he determined that the emergency vehicles were not involved in a traffic stop but in an accident scene, he returned his attention to the roadway, placed his foot back on the accelerator and almost immediately struck and killed Sergeant Lewis.

Bradley police officer James Jeck testified that he did not arrive at the location where the van had crashed until after Sergeant Lewis had been killed. He had gotten stuck in the median while trying to cross over from the northbound lanes to the southbound lanes. While Jeck waited for a tow truck to remove his vehicle from the median, he listened to the other officers at the scene on his police radio. After the tow truck removed his squad car from the median, Jeck arrived at the scene. He noted that Sergeant Lewis had been wearing dark blue pants, a dark blue, long-sleeved shirt, a dark blue jacket and black boots. None of Lewis's clothing had reflective material on it.

Jeck explained that if an officer plans to inspect the roadway, another officer should be present to slow oncoming traffic or to alert the inspecting officer of approaching traffic. Jeck also noted that Bradley police department policies and procedures dictate that an officer must not put himself in harm's way when searching for potential

accident victims. Bradley police officers do not need permission to shut down an interstate.

Tyrone Kanzaki, a master sergeant with the Illinois State Police, testified that he spoke to the defendant immediately after the collision. The defendant told Kanzaki that when he initially saw all the emergency lights, he slowed down. The lights were coming from the shoulder of the right lane, so the defendant moved over to the left-hand lane of traffic. He continued to drive northbound when he saw a flash of metal and heard a loud thud. Kanzaki said that the defendant had acted appropriately when he slowed down and moved from the right lane to the left to avoid a "chaotic" scene.

Before trial, plaintiff brought a motion *in limine* to prohibit the introduction of any evidence regarding Sergeant Lewis's previous hearing loss and use of a hearing aid at the time he was struck by the defendant's vehicle. The plaintiff argued that any evidence of Lewis's hearing loss was irrelevant because an evaluation conducted 10 years before the accident had determined that his hearing loss did not impact his abilities as a police officer. The defendant argued that Lewis's hearing loss was highly relevant because a jury could reasonably infer that Lewis may not have heard the defendant's oncoming vehicle and should have exercised greater care for his own safety in light of his hearing impairment. The trial court granted the plaintiff's motion *in limine*.

During a jury instruction conference, the defendant tendered instruction number four. Illinois Pattern Jury Instructions, Civil, No. 70.03 (1995) (hereinafter IPI Civil (1995)); 625 ILCS 5/11—1003(a) (West 1996). The instruction read, in pertinent part:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that: Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway."

See 625 ILCS 5/11—1003(b) (West 1996). The defendant also tendered jury instruction number five. See IPI Civil (1995) No. 60.01; 625 ILCS 5/11—1007(b) (West 1996). The instruction provided:

"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

Where a sidewalk is not available, any pedestrian walking along and upon a highway shall walk only on a shoulder, as far as practicable from the edge of the roadway.

If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether

and to what extent, if any, a party was negligent before and at the time of the occurrence."

The plaintiff argued that these instructions should not be tendered to the jury because Lewis, as a police officer, was not a pedestrian under the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1996)). The trial court agreed and refused to tender the instructions.

The jury ultimately returned a verdict awarding the plaintiff $161,885 for loss of past economic benefits, $868,100 for loss of future economic benefits and $162,768 for loss of society, for a total award of $1,192,753. The jury found Sergeant Lewis 40% negligent, resulting a net award of $715,651.

After trial, the defendant filed a posttrial motion seeking judgment *n.o.v.* or, in the alternative, a new trial. The defendant argued that the trial court erred in: (1) refusing to instruct the jury about Sergeant Lewis's statutory duties as a pedestrian; and (2) refusing to permit the defendant to present evidence regarding Lewis's hearing impairment. The trial court commented that it did not err in refusing to tender instruction number four to the jury because this case did not involve a road with a crosswalk. However, the trial judge believed that he had committed error by refusing to tender jury instruction number five to the jury. Therefore, the trial court vacated the judgment and awarded a new trial.

## II. ANALYSIS

### A. Jury Instruction Number Five

On appeal, the plaintiff first argues that the trial court abused its discretion in granting the defendant's motion for a new trial. She contends that the court properly denied jury instruction number five at trial because a police officer acting in an emergency situation should not be held to the same standard as an ordinary pedestrian. In response, the defendant argues that the trial court properly granted a new trial after it had erroneously refused to instruct the jury on Sergeant Lewis's statutory duty as a pedestrian. In the alternative, the defendant argues that the trial court properly ordered a new trial because: (1) he was entitled to a statutory jury instruction that required Sergeant Lewis to yield the right of way to approaching motorists; and (2) the trial court erred in refusing to permit the defendant to present relevant evidence regarding Sergeant Lewis's hearing impairment.

The decision to grant a posttrial motion and order a new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. *Bishop v. Baz*, 215 Ill. App. 3d 976, 980, 575 N.E.2d 947 (1991). Further, it is in the trial

court's discretion to determine whether a jury instruction is applicable and accurately states the law. *Hobart v. Shin,* 185 Ill. 2d 283, 705 N.E.2d 907 (1998).

■ In Illinois, a pedestrian is defined as "[a]ny person afoot, including a person with a physical, hearing or visual disability." 625 ILCS 5/1—158 (West 1996). Section 11—1007(b) of the Illinois Vehicle Code directs pedestrians walking along and upon a highway to walk only on a shoulder, as far as practicable from the edge of the roadway when a sidewalk is not available. 625 ILCS 5/11—1007(b) (West 1996). Additionally, every pedestrian crossing a roadway at any point other than within a marked crosswalk shall yield the right-of-way to all vehicles upon the roadway. 625 ILCS 5/11—1003(a) (West 1996).

■ The acts of individuals whose duties require them to be on the highway must be judged by a standard more liberal than in the case of an ordinary pedestrian who has no care other than his own safety. *Flanagan v. Valente,* 31 Conn. Supp. 143, 325 A.2d 532 (1974).

Here, both parties concede that no Illinois court has addressed the issue of whether a police officer, in the course of responding to an emergency, is held to the same standard as an ordinary pedestrian. We hold that he is not.

The plaintiff has cited to several other jurisdictions that have reviewed this issue and determined that a police officer or emergency responder will not be held to the duty of a pedestrian under similar circumstances. We are persuaded by those cases.

In *Knutter v. Bakalarski,* 52 Wis. 2d 751, 191 N.W.2d 235 (1971), a volunteer fireman was struck by a vehicle while crossing a highway as he attempted to locate a fire. The Wisconsin Supreme Court held that the fireman had a lesser duty than an ordinary pedestrian when crossing the highway. It noted that the fireman "was entitled to have uppermost and predominately in his mind the fact that he was attempting to locate a fire and prevent destruction. In such a frame of mind, he cannot and should not be compared with the average pedestrian crossing a street but with an ordinarily prudent fireman under similar conditions." *Knutter,* 52 Wis. 2d at 758, 191 N.W.2d at 239.

In *Dailey v. Lange,* 20 Wash. App. 12, 578 P.2d 1322 (1978), the court found that a police officer who was injured while directing traffic at an accident scene was not a pedestrian for purposes of instructing the jury as to his duty. A police officer is not required to keep a constant lookout for approaching vehicles and "is not held to the same duty as a pedestrian." *Dailey v. Lange,* 20 Wash. App. at 16, 578 P.2d at 1326. In *Sutton v. Shufelberger,* 31 Wash. App. 579, 586, 643 P.2d 920, 925 (1982), the court approved a jury instruction that provided for a "special duty situation of a police officer" who was struck while in the course of traffic enforcement.

A similar result was reached in *Clayborne v. Mueller*, 266 Md. 30, 291 A.2d 443 (1972). In that case, a police officer was injured while standing next to a stopped vehicle. In approving an instruction that required the jury to consider whether the injured police officer exercised due care based upon his position as a police officer, the court noted, "This was not strictly a pedestrian case because it was not a situation where the pedestrian was disputing a motorist's right of way." *Clayborne v. Mueller*, 266 Md. at 40, 291 A.2d at 447.

■ In granting the defendant's motion for a new trial, the court focused on the fact that the defendant could not have differentiated Sergeant Lewis, dressed in dark clothes, from any other person crossing the highway at night. While this is true, the focus of our consideration is on the duty that Sergeant Lewis was under as a police officer looking for an ejected infant on the highway in the middle of the night. Common sense dictates that a police officer under these circumstances cannot be held to the same duty as a pedestrian crossing a highway. Therefore, the trial court erred in vacating the judgment and ordering a new trial based on its failure to tender jury instruction number five. That instruction was properly denied because Sergeant Lewis did not have the same duty as an ordinary pedestrian under the circumstances of this case.

## B. Jury Instruction Number Four

■ In the alternative, the defendant argues that he is entitled to a new trial because the trial court should have tendered instruction number four to the jury. That instruction listed the statutory mandate that every pedestrian crossing a roadway at any point other than a marked crosswalk must yield the right-of-way to all vehicles upon the roadway. See 625 ILCS 5/11—1003(a) (West 1996).

We reject this contention. The defendant was not entitled to have jury instruction number four tendered to the jury because Sergeant Lewis was not a pedestrian. He was acting in his capacity as a police officer responding to an emergency when he was struck by the defendant.

## C. Sergeant Lewis's Hearing Loss

■ Finally, the defendant claims that he is entitled to a new trial because the trial court erred in granting the plaintiff's motion *in limine* to exclude evidence regarding Sergeant Lewis's hearing impairment. A trial court's decision to grant a motion *in limine* will not be disturbed absent an abuse of discretion. *Hallowell v. University of Chicago Hospital*, 334 Ill. App. 3d 206, 777 N.E.2d 435 (2002).

Here, we find no abuse of discretion. Lewis's hearing loss was not relevant because Sergeant Lewis had been cleared for police activities

10 years prior to the accident. There was no evidence indicating that his hearing loss in any way impaired his ability to act as a police officer. Further, it is highly unlikely that, even if Sergeant Lewis had heard the defendant's vehicle, he would have been able to take any evasive action considering the speed of the defendant's vehicle at the time of impact. The trial court properly granted the plaintiff's motion to exclude this evidence.

## III. CONCLUSION

In sum, we find that the trial court erred in vacating the judgment and ordering a new trial. Sergeant Lewis, as a police officer responding to an emergency situation, was not under the same duty as an ordinary pedestrian when he was struck by the defendant. The trial court properly denied jury instructions four and five and excluded evidence of the hearing loss.

The order of the circuit court of Kankakee County granting the motion for a new trial is reversed and the judgment, based on the jury's verdict, is reinstated.

Reversed; verdict reinstated.

HOLDRIDGE, J., concurs.

PRESIDING JUSTICE McDADE, dissenting:

After carefully considering the opinion of the majority, I find that, for the reasons that follow, I cannot agree with the decision to reverse the trial court's order of a new trial and I, therefore, respectfully dissent.

Even though he falls squarely within the statutory definition of "[a]ny person afoot" (625 ILCS 5/1—158 (West 1996)), and even though he has moved away from the scene of the accident, the majority finds that a police officer, acting in the course of his duties, is not a "pedestrian." He is, therefore, not held to the same duty as an "ordinary pedestrian."

I have no real quarrel with either that conclusion or the reasoning on which it rests, and I could probably concur on that basis but for my other concerns. This court, however, has the latitude to affirm a decision of the trial court not only for the reason given but also for any reason that finds support in the record. *Burd v. Industrial Comm'n*, 207 Ill. App. 3d 371, 382, 566 N.E.2d 35, 42 (1991). It is for other, but related, reasons that I believe the order granting a new trial should be affirmed.

In arriving at the conclusion that a police officer, acting in the

course of his duties, is not a pedestrian, the majority acknowledges that this is a case of first impression in Illinois and relies solely on cases from other states. Illinois also has no statute that addresses the due care standard for a policeman "afoot" on the highway in the course of his duties. It seems clear that the jury reached its decision in a vacuum of legal guidance about Officer Lewis's duty of care for his own safety on the highway, rendering the verdict speculative.

Moreover, the majority makes no suggestion about how the relative standards of care of public servants with legitimate business on and about the highway and those of motorists legitimately driving on the highway should be balanced. In this case, the police officer had moved away from the scene of the accident and was walking in a traffic lane on an interstate highway at 1 o'clock in the morning wearing dark clothing without any reflective material and alone, without the safety backup required by his departmental rules. In light of these facts, it appears that the majority makes motorists insurers to some degree of the safety of anyone on the highway who is wearing, or is entitled to wear, a uniform or badge, no matter what the conditions, as long as he or she is on the job. Here the jury reduced the verdict by 40%, apparently finding that to be the proportion of the officer's comparative fault, and the majority reinstates this discounted verdict. But, in the absence of a standard, how is it possible to say whether the reduction was not enough, too much, or just right? For this reason, too, I believe a new trial is warranted.

Finally, I think the trial court erred in excluding testimony of the officer's hearing impairment. Evidence of that impairment was ruled irrelevant on the basis of a 10-year-old determination that his hearing loss did not impact his abilities as a police officer. Even assuming there had been no negative changes in his hearing in the intervening 10 years and further assuming that his hearing aid was turned on, an assessment that the officer could perform his duties as a police officer is simply not the same issue as whether he could discern a particular vehicle approaching him from the rear on a highway where people and other vehicles were actively involved with an accident scene. These are, in my opinion, legitimate questions to be considered and answered by the finder of fact. The jury found plaintiff's deceased 40% at fault without any knowledge of his hearing impairment; the impact of this information could be very significant. This provides yet another reason to send this matter back for a new trial.

For these reasons, I would affirm the order of the Kankakee County circuit court granting a new trial in this matter, and I therefore dissent from the majority opinion.